The UNITED STATES

v.

Alexander Paul BREWER.

Crim. No. 022273-2.

United States District Court,
M. D. Pennsylvania.

Sept. 4, 1973.

Harry Nagle, Lewisburg, Pa., S. John Cottone, Scranton, Pa., for plaintiff.

Ronald Travis, Williamsport, Pa., for defendant.

## OPINION

MUIR, District Judge.

Alexander Paul Brewer, a convict at the Lewisburg Federal Penitentiary, was charged with assault with intent to commit sodomy and with the act of sodomy itself,[1] in violation of the Pennsylvania Penal Code.[2] The Code is made applicable to crimes committed by prisoners in federal custody by the Assimilative Crimes Act.[3]

The Defendant was acquitted by a jury of the assault count but was convicted on the sodomy count. Defendant moved for an acquittal n. o. v. on the sodomy conviction, challenging the constitutionality of the statute. The court denied the motion and this opinion sets forth the reasons for the denial. For purposes of the motion, considering the jury finding, the act of anal sodomy engaged in by Defendant with a fellow prisoner must be deemed consensual. The Defendant claims that he should be free to engage in sodomy in prison. Sodomy statutes may well be constitutionally suspect as to the general popula-

tion. We express no opinion thereon. However, in my view, the statute is constitutional as to this inmate Defendant.

The issue raised by the Defendant's motion entails a determination of the appropriateness of the Defendant's raising the possible facial unconstitutionality of the statute as applied to a situation where its existence can be justified.

The view of sodomy as a sin goes back to the basic tenets of the Jewish faith which characterized the act as an "abomination."[4] The repugnance to sodomy was carried into Christian ideology and was left by the common law to the jurisdiction of the ecclesiastical courts. The 18th Century American legislatures forbade sodomy to express moral outrage at the act itself and to prevent a general deterioration of the moral fiber of the populace. The attitude of those prohibiting this so-called victimless sexual crime was that any sexual act not leading to procreation was sinful.

While there has been no Supreme Court decision on the precise issue of the constitutional validity of statutes aimed at preventing "deviant sexual conduct," the apparent trend of recent decisions would indicate that such a right among or between consenting adults does exist.[5] The broad "victimless" Pennsylvania sodomy statute involved in the instant case certainly cannot even claim a purpose as weighty as that of the abortion statutes struck down as unconstitutional, where harm to the fetus was brought into question.[6] There are

---

1. 18 P.S. § 4501 reads as follows:

    "Whoever carnally knows in any manner any animal or bird, or carnally knows any male or female person by the anus or by or with the mouth, or whoever voluntarily submits to such carnal knowledge, is guilty of sodomy, a felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding five thousand dollars ($5,000), or to undergo imprisonment, by separate or solitary confinement at labor, not exceeding ten (10) years, or both."

2. 1917, July 16, P.L. 1000 §§ 1–3, 18 P.S. §§ 4501, 4502.

3. 18 U.S.C. §§ 7, 13 (1948).

4. Genesis 10:5–8, 24–26; Deuteronomy 23:17 and Leviticus 18:22–23, 20–16.

5. See Griswold v. Conn., 381 U.S. 479, 85 S. Ct. 1678, 14 L.Ed.2d 510 (1964); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1971).

6. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 755, 35 L.Ed.2d 147 (1973).

several state and lower federal court cases dealing with sodomy between married couples and between homosexuals. Buchanan v. Batchelor, 308 F.Supp. 729 (N.D.Tex.1970), opinion vacated in Wade v. Buchanan, 401 U.S. 989, 91 S. Ct. 1221, 28 L.Ed.2d 526 (1971) on different grounds; U. S. v. Doe, 12 Crim. L.Rep. 2531 (D.C.Sup.Ct.1973). As with the contraceptive cases, the court [rule] will probably apply a balancing test, weighing the purpose of the sodomy statute in expressing moral outrage at such conduct against the right of privacy and the changing motiff of sexual conduct within which deviant views should be permitted to exist.[7]

■ If the simple question of adult consensual sodomy were involved, this Court might strike down the statute. However, the conduct of Alexander Paul Brewer occurred in prison, where the rationale for regulation of the conduct at issue is strong. While imprisonment results in the forfeiture of certain rights, it does not extinguish all claims to protection from unconstitutional or illegal regulation and procedure. Gittlemacker v. Prasse, 428 F.2d 1 (C.A. Third Cir. 1970), Gray v. Creamer, 465 F.2d 179 (C.A. Third Cir. 1972). Aside from the inevitable diminished right to privacy in prisons, there exists the need to regulate activities in prisons which in other settings would be unnecessary.

■ Prison rapes are a serious problem. The psychological effect upon the victim may be serious and may reduce the chances of rehabilitation, slim as they are under present conditions. Perhaps forward-looking legislative and administrative reforms with respect to conjugal visits will alleviate the problem of prison rape. Considering the fact

that inmates are in need of protection from sexual and other assaults encountered in prison, prohibition of consensual sodomy in prison cannot be viewed as unconstitutional legislation. It is not necessary to reach the result in this case on the basis of finding an absence or near absence of a prisoner's right to privacy. The interest in preventing disorder in prison and injury to prisoners is sufficient to justify the existence of a prison regulation, or a state or federal statute, prohibiting consensual acts of sodomy between prison inmates. Two additional factors to be considered in balancing the state's interest in proscribing a prisoner's conduct against asserted constitutional rights or privileges are: (1) the threats of violence which may cause a victim to "consent" to sodomy, and as a corollary, the difficulty in proof, and (2) the very tense and potentially dangerous situation existing within the prison confines as opposed to society at large. These additional factors convince the court that "consensual" sodomy between prison inmates may be validly prohibited.

■ We have held in effect that the Defendant has standing to litigate the constitutionality of the sodomy statute as applied to him, but this does not, as a matter of constitutional construction, allow him to raise the question of the possible facial invalidity of the statute as applied to others.[8] A Defendant in a criminal action certainly has an "injury in fact," which is more than an injury to a "cognizable interest." Sierra Club v. Morton, 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). In other words that the Defendant is allowed to mount an attack on the constitutionality of the statute as applied to him does not also automatically enable the Defendant

---

7. Dissent of Justice Holmes, Lochner v. N. Y., 198 U.S. 45, 75, 76, 25 S.Ct. 539, 49 L. Ed. 937 (1905) ; Concurring opinion of Justice Douglas, Eisenstadt v. Baird, 405 U.S. 438, 457, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), citing Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949).

8. Some courts treat standing and constitutional construction as totally separate concepts while others make no distinction. See Sedler, Standing to Assert Constitutional Jus Teri In The Supreme Court, 71 Yale L.J. 599 (1962), and The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970).

to prevail on his constitutional challenge simply because the statute might suffer some infirmity as to other individuals. He must establish a reason why the rule of United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) disallowing the utilization of third party rights, should not be followed in his case.

United States vs. Raines was a 15th Amendment case holding that a defendant prosecuted in a criminal action, who was clearly involved in state action, would not be permitted to assert the rights of a hypothetical third party to invalidate the entire statute which as written was applicable to individuals involved in private acts of voter discrimination. The principle as stated is:

". . . one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional . . ." 362 U.S. at p. 21, 80 S.Ct. at p. 522.

Several broad exceptions to the Raines' rule exist. Persons challenging the constitutionality of a statute under which they are prosecuted as overbroad, which, as applied to them is constitutional will prevail in having the statute struck down if considerations of public policy are satisfied in one of the situations explained below. These broad exceptions are as follows:

■ 1. *Expressive conduct exception.* Where there is a "chilling effect" on the expressive conduct of others, the one to whom the statute is constitutionally applied may assert the possibility of unconstitutional application because of the statute's facial defect. The exception is based on a desire not to inhibit the exercise of fundamental rights

which might otherwise be discouraged because of the public's fear of prosecution under the suspect statute. 362 U.S. at p. 22, 80 S.Ct. 519.[9] Were this exception broadened to the right asserted in the instant case, premature constitutional litigation might arise in a context where more appropriate litigants should be represented. This discussion should in no way reflect on the quality of the right of privacy within the penumbra of the Bill of Rights. Without diluting the high value on the right to privacy, the court believes that sexual acts conducted in private are not likely to be inhibited by the inability of the defendant to raise the rights of others.

■ 2. *Impact Exception.* Where the constitutional rights of one not a party could be injured by the litigation *and* the third party has no effective way to preserve those rights, the court may consider those rights before it. See, Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). At least one case has endorsed the use of this exception to permit homosexuals, whose consensual public conduct could be validly proscribed, to assert the rights of homosexuals whose conduct occurs in private, where the sanctions of the statute apply to conduct in both places. U. S. v. Doe, 12 Cr.L.Rep. 2531 (D.C. Superior Ct.1973). Our reasoning indicates that some sort of relationship must exist between the litigant and those whose rights he seeks to utilize, even if it is that of accessory to a crime and the principal. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Another relationship coming within the ambit of the exception is that of a defendant dispenser of contraceptives, in a criminal action, to that of a receiver and user of contraceptives, the receiver not subject to punishment for

9. But see the case of Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919) and McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) where, in the latter case, the Establishment Clause of the 1st Amendment could be asserted by defendants in a prosecution for a

blue law violation but they could not assert the Free Exercise Clause because they were not individuals who wished to do business on Sunday due to their celebration of the Sabbath on a different day. This is in spite of the fundamental character of the 1st Amendment right at issue in this case.

receipt of the devices. Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1971). The rights of the user in *Eisenstadt* would never be protected unless the person subject to prosecution is given the right to assert them. The impact contemplated is not merely of the general sort which is felt whenever a question of interest or importance is decided by the courts, for such a broad rule would eliminate the rationale of the Raines case. The impact justifying broadening of the "case or controversy requirement" [10] is that which is felt when there is some relationship between the litigant and the third party.[11]

■ 3. *Universality Exception.* An exception to the Raines' rule is justified where the legislature would not want the challenged statute to stand unless it can stand in all cases. 362 U.S. at pp. 22, 23, 80 S.Ct. 519. This can rarely be shown. There is no evidence of such a legislative intent by the Pennsylvania lawmakers in the present case. Along the same reasoning, an exception will be recognized where the application of the Raines' rule to a criminal statute "would necessitate such a revision of its text as to create a situation in which the statute no longer gave an intelligible warning of the conduct it prohibited." 362 U.S. at p. 22, 80 S.Ct. at p. 523. To hold that consensual sodomy between male adults in prison can be constitutionally prohibited, along with forced or non-adult sod-

omy without the prisons, does not confuse the statute so as to render it "unintelligible." This court only decides the narrow question of the constitutionality of the Pennsylvania sodomy statute as applied to consenting adults in prison in Pennsylvania.

■ 4. *Consistent invalidity exception.* A fourth exception proposed by the Raines' court relates to the public policy against enforcing a statute whose legitimacy has been adversely determined in a large number of cases. The Raines' rule will not be applied when the statute has already been declared unconstitutional in a vast majority of cases, 362 U.S. at p. 23, 80 S.Ct. at p. 523. There has been no mass of decisions invalidating sodomy statutes. The Defendant fits into none of the exceptions to the Raines' rule.

### PRÉCIS

Defendant has standing to attack the Pennsylvania sodomy statute. The determination of this court is that such a statute, while perhaps constitutionally suspect as to consensual sodomy between adults in the general population, can be validly applied to the prison setting. The defendant cannot be allowed to allege the possible facial invalidity of the statute because he does not come within any of the public policy exceptions to the Raines' rule.

---

10. U.S.Const. Art. III, Sec. 2 as interpreted by Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

11. For example of the relationship, see the cases dealing with suppression of illegally seized evidence, Sedler, Standing to Assert Constitutional Jus Teri In The Supreme Court, 71 Yale L.J. 599, 656 (1962).