Gioanna I. La Carrubba, J.
There are two separate criminal actions pending in which the same motion has been made to this court. We will treat them together.
' Defendants have been charged with a violation of section 130.38 of the Penal Law, consensual sodomy. Both have moved to dismiss on the ground that this section is unconstitutional:
'Section 130.38 of the Penal Law states: >“ A person is guilty of consensual sodomy when he engages in deviate, sexual intercourse with another person.”
Deviate sexual intercourse as 'defined by subdivision 2 of section Í30.00 of the Penal Law means: ‘ ‘ sexual conduct -between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva,”
In the ease involving defendant Mehr, the information alleges that the said defendant violated the above section in that he committed an act of consensual sodomy.
The information charging Michael Bice with violating section 130.38 adds that the alleged violation occurred in a public place, that he committed an act of consensual sodomy in a public place, to wit: “in the restroom■ of the Farmer’s Market located on Sunrise Highway in the Hamlet of Bayshore.”
We hold that section 130.38 and subdivision <2 of section 130.00 of the Penal Law as it is encompassed by section 130.38 are unconstitutional for the. following reasons.
The first question to be determined is the standing of the defendants to raise the issue of constitutionality. Since both defendants claim that the statute is unconstitutional on its face, and they. are charged with violating that statute they have standing to raise the issue. One defendant is merely charged with a violation of the section; the .second defendant is charged with such a violation in. a public place: Thus the statute is squarely placed before this court for determination.
However, the People claim the defendants have no standing to raise the issue of unconstitutidnality; the defendants cannot argue that their rights of privacy are violated because they are charged with having committed the acts in a public place.
Under the general rule as stated in United States v. Raines (362 U. S. 17) the questioned statute must violate the rights of the particular party who is attacking it and not some third party. Raines also points out that this is not an absolute rule, there may ibe exceptions. There are four broad "exceptions and when a case fits into any of .these categories the standing rule should be relaxed. These exceptions.have been considered and *513 discussed in a number -of cases; a very cogent discussion is to be found in United States v. Brewer (363 F. Supp. 606) in which case, it may be observed, the United States District Court for the Middle District of Pennsylvania treated a consensual sodomy statute and indicated that the statute may be unconstitutional as applied to consenting adults.
Brewer (supra) describes the four exceptions as: expressive conduct exception under which a person may attack a statute, even though constitutionally applied to him, as facially defective because there is a “ chilling effect ” on the expressive conduct of others. The second is the impact exception under which, a party may attack the constitutionality of a statute because the rights of one not a party may be involved and the third party has no effective way to preserve those rights. Third, is the universality exception whereby a statute may be challenged because the Legislature would not want the challenged statute to stand unless it can stand in all cases. Lastly is the consistent invalidity exception which relates to the general public policy against enforcing a statute the validity of which has been adversely determined in a large number of cases.
It is the second exception which may be applied here. In an attack on the constitutionality of a District of Columbia statute making s-odomy a crime, the Superior Court of the District of Columbia found that on account of the “ impact ” exception as set down in Raines (supra), the defendants there had standing to raise the constitutional issue (United States v. Doe, 12 Cr. L. 2531). The court said that even though the defendants were charged -with committing sodomous acts in a quasi-public place they could challenge the statute as infringing on the right to sexual privacy enjoyed by others as well as themselves. It would be unlikely and impractical that the rights of third parties would be asserted in separate actions. Judge Habbeck wrote (p. 2532): “ Furthermore, the fact that spouses are not commonly prosecuted does not demonstrate that they cannot or will not be prosecuted in the future. As Chief Justice Burger has recently put it: ‘ In the face of a rigid and narrow statute * * * no one * * * should be placed in a posture of dependence on a prosecutorial policy nr prosecutorial discretion ’ Roe v. Wade [410 U. S. 113] 12 Cr L 3099.”
This is analogous to the instant situation. The People claim that the defendants have been charged with committing sodomous acts in public. Further the People allege in their affidavit in opposition in the Mehr case that -only such -acts committed in 1 * public ” places are prosecuted. Clearly these defendants, then, *514 .i,ave standing to challenge the 'statute in question, since aside from their rights, the rights of third persons, .who have no forum in which to raise the issue are involved.'
In addition.to the ordinary strong presumption of constitutionality of -a statute, this court has done some research into the matter and found two caáes which have upheld the constitutionality óf section 130.38, one of which cases was written by our esteemed colleague. Honorable Alfred M. Lama, People v. Calabrese (Ce-Cr 9264A-73, Feb. 28, 1974) and the other toy the United States District Court, Raphael v. Hogan. (305 F. Supp. 749). Additionally, this matter has toeen discussed in an anno: tation entitied 'Consent as Defense in Prosecution for Sodomy (58 ALB 3d 636), and the annotation cites a number of cases from other States which have held their respective-sodomy statutes - to toe ’ constitutional. In spite . of this weightly assemblage,, this, .court humbly disagrees.
The gist of the challenged statute is that certain conduct between two. consenting tout unmarried adults is a.criminal offense, regardless of where such conduct takes place. Married people are excluded from this proscription, as are unmarried people who engage in certain other forms of sexual conduct. What is the .reasonable basis for this distinction?
The. intent to toó gleaned from the very words of the statute. is the intent to prohibit unmarried persons, even.though con-, senting, from engaging in some form of sexual conduct, which has toeen termed sodomy. Married people are .not prohibited from engaging in such conduct by the very definition of terms (Penal Law, § 130.00, sutod. 2). Furthermore, toy definition, single or unmarried persons, who engage in sexual intercourse in the “ ordinary meaning ” (Penal Law, § .130.00, sutod. 1) are not committing a crime. What we are then faced with is a distinction, for which we can find_.no rational basis between married people and unmarried, who engage in. sodomy and between unmarried people who engage in£ ‘ ordinary sexual intercourse ” and those , unmarried people who engage in “ deviate sexual intercourse ” or sodomy, keeping in mind in all cases the parties are consenting.
Section 1.Ó5 óf the Penal Law establishes the general purpose of the law. Among others these include: proscribing conduct which “ unjustifiably and inexcusably causes or threatens substantial harm to individual or public interests-; ” (sutod, 1) and insuring public safety. If the consensual sodomy statute was put forth in furtherance' of these goals, they’are ill served. We cannot see how the activities of two consenting adults threat *515 ens or causes any, nonetheless substantial, harm to either individual or public interests. Nor can we see any threat to public safety.
It is argued that prosecutions under this statute (Penal Law, § 130.38) are limited to those activities conducted in a public place. However, the statute is not so limited in its wording and must ibe held to proscribe both public and private conduct.
We cannot see what overriding or compelling 'State interest the Legislature sought to protect by enacting this law. If acts of sodomy so outrage society that such acts should be criminalized then they should be so as to all Iwho commit them. If sodomous acts have serious moral and health consequences so that they must be proscribed then they, again, should be so for all people, not just unmarried. The married adult, as well as the unmarried, has a right to be so protected. Or if the State’s interest lies in protecting the morals of unmarried persons, then all sexual conduct between two unmarried persons should be prohibited not just sodomous conduct. If the real purpose is to prevent homosexuality, the legitimacy of such purpose not being here considered, then the statute should proscribe conduct between unmarried persons of the same sex, not any such persons. Lastly if the State’s interest is to protect the public from sexual acts done in public then the statute should so state. Clearly none of these purposes is indicated. The statute seeks to prevent a certain group of ¡people from doing certain acts and this court can find no basis for this classification, and accordingly hold that it violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York'.Constitution.
As has been oft noted, Mr. Justice Douglas, speaking for the court in Griswold v. Connecticut (381 U. S. 479) eulogized the marriage institution and held that the right of marital privacy was within the penumbra of rights guaranteed by the Bill of Rights. Thus regulations of the .sexual conduct of married people are constitutionally prohibited.
A number of courts have viewed this as circumscribing the area of sexual conduct which may not be regulated, and impliedly permitting the regulation of the sexual conduct of unmarried people. This has been, apparently the foundation for the holding that the distinction between married and unmarried .people is not violative of the Equal Protection Clause. (Raphael v. Hogan, 305 F. Supp. 749, supra.)
With this we cannot agree. Unquestionably the right of marital privacy stems from the basic right of an individual to *516 privacy. "Why then protect that right for those who enter a .particular institution or state in life ¡and not ¡all? “ ¡Such a law cannot stand in light of the familiar principle, so often applied by this Court, that a ‘ governmental purpose to control or prevent activities constitutionally .subject to state regulation may not be achieved iby means which sweep .unnecessarily broadly and thereby invade the area of protected freedoms.’ NAACP v. Alabama, 877 U. S. 288, 307.” (Griswold, supra, p. 485.)
The holding of the ¡Supreme Court in Eisenstadt v. Baird (405 U. S. 438) was that a Massachusetts statute which prohibited the sale of ¡contraceptives to .single persons was violative of the Equal Protection Clause of the Fourteenth Amendment. The court said in explaining its decision (p. 453): “If under Griswold the distribution of contraceptives to married persons cannot be prohibited, a ban un distribution to unmarried persons would be equally .impermissible. It is true that in Griswold the right of privacy in question inhered in the marital relationship. vet the marital couple is not an independent entity with a mind and heart of its own, but an assocation of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the individual, married or single, to be free from ¡unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.”
We view the consensual sodomy statute in the same way ias the Supreme Court in Eisenstadt viewed the Massachusetts statute, and agree that the distinction made amounts to invidious discrimination.
H, as has-been held in Griswold (881 U. S. 479, supra), inquiry into or regulation of a married person’s sexual conduct is an invasion of the right to privacy, then inquiry into or regulation of a single person’s sexual conduct is equally violative of the right to privacy. Thus a ¡statute prohibiting such conduct of only unmarried persons would be -a violation of equal protection.
Judge ¡Carmelo Pab-lato of the City Court of Buffalo, in April, 1974 ¡declared section 180.38 of the Penal Law to foe .unconstitutional in People v. Johnson (77 Misc 2d 889). To date that case has not been reversed. It was the holding of the court that the consensual sodomy statute was violative of the Equal Protection Clause of the United ¡States ¡Constitution. The court said: (p. ¡891): “ The question is, rather, whether there is .any logical basis on which the status of marriage between the participants should make the difference between right and wrong in the engaging in one mode of sexual intercourse rather than another, *517 This court believes there is no such logical basis, for the simple reason that .all the arguments that have ever pertained to the prohibition of ‘ deviate ’ forms of intercourse prohibited by section 130.38 have pertained irrespective of the marital status of the participants. The subject statute would make criminals of some .citizens, but not others, on ¡the basis of an unsupp or table distinction and would constitutionally wrongfully deny to the former the equal protection of the law.”
Accordingly^ this court having held that section 130.38, and subdivision ! of section 130.00 and subdivision 2 of section 130.00 of the Penal Law as encompassed by section 130.38, is unconstitutional because it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and section 11 of article 1 of the New York Constitution, the defendants’ motions are granted and the informations are dismissed.